UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**JAJUAN THARPE,**

    **Plaintiff,**

    v.

**SECURITAS SECURITY SERVICES USA, INC.,**

    **Defendant.**

Civ. No. 20-13267 (KM) (ESK)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

Jajuan Tharpe sued his former employer, Securitas Security Services USA, Inc., alleging that Securitas unlawfully terminated him after he took family leave. Securitas moves to compel arbitration and dismiss the complaint. (DE 8.)[1] For the following reasons, the motion is **DENIED** without prejudice.

## I. BACKGROUND

Securitas hired Tharpe as a security officer. (Compl. ¶ 3.) As a condition of employment, Securitas required arbitration of employment claims, a policy set forth in a "Dispute Resolution Agreement." (Agreement ¶ 1.) The Agreement provided that "both you and the Company mutually agree and thus are required to resolve claims either may have against the other by Arbitration instead of in a court of law." (*Id.* ¶ 1.) The Agreement "applies to any dispute arising out of or related to Employee's employment with Securitas . . . or

---

[1]     Certain citations to the record are abbreviated as follows:

    DE = docket entry number

    Compl. = Complaint (DE 1, Ex. A)

    Opp. = Tharpe's Opposition to Securitas's Motion (DE 14)

    Agreement = Dispute Resolution Agreement (DE 8-2, Ex. 3)

    Tharpe Decl. = Declaration of Jajuan Tharpe (DE 14-1)

    Hicks Decl. = Declaration of Adacia K. Hicks (DE 15-2)

termination of employment." (*Id.* ¶ 2.) The Agreement specified that it "applies to all disputes regarding the employment relationship. This[] includes, without limitation, . . . disputes concerning . . . claims arising under the . . . Family Medical Leave Act." (*Id.*)

The Agreement also allocated responsibility for attorney's fees and costs. The parties are to bear their own attorney's fees, unless "applicable law" provides otherwise. (Agreement ¶ 10.) As to the costs of arbitration, Securitas will cover costs if "required by law," but if not so required, the parties will split costs. (*Id.*) Any disputes over apportionment will be decided by the arbitrator. (*Id.*)

Tharpe is unsure whether he received this Agreement. He contends that the Agreement was among "a lot of paperwork" to be signed, and he "do[es] not recall seeing the Agreement or receiving a copy." (Tharpe Decl. ¶¶ 3–5.) But Tharpe did sign an acknowledgment form. (Agreement, Acknowledgment.) That form provided as follows:

> I have received a copy of the Securitas Security Services USA, Inc. (the "Company") Dispute Resolution Agreement (the "Agreement") and I have read and I understand all the terms contained in the Agreement. I understand that employment or continued employment at the Company constitutes acceptance of this Agreement and its terms. I further acknowledge that the Company and I are mutually bound by this Agreement and its terms.

(*Id.*) Below this statement were signature spaces for a Securitas representative and Tharpe, who both signed. (*Id.*) The Securitas representative who co-signed clarifies that the acknowledgment was on its own page, but was provided with the Agreement "as a single document." (Hicks Decl. ¶¶ 5–8.)

After signing, Tharpe worked for Securitas for two and a half years until he took leave to spend time with his newborn son. (Compl. ¶ 12.) When he returned, he discovered that Securitas had terminated his employment, allegedly because he had taken leave. (*See id.* ¶¶ 15, 16, 26.)

In response, Tharpe sued Securitas in New Jersey Superior Court, alleging that his termination violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the New Jersey Family Leave Act ("NJFLA"), N.J.

Stat. Ann. § 34:11B-9. (*Id.* ¶¶ 27–64.) Securitas removed the case to this Court and then moved to compel arbitration and dismiss. (DE 1, 8.)

## II. STANDARD OF REVIEW

"[W]hen it is clear on the face of the complaint [or documents relied upon by the complaint] that a validly formed and enforceable arbitration agreement exists and a party's claim is subject to that agreement, a district court must compel arbitration under a Rule 12(b)(6) pleading standard . . . ." *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020). But if (1) the materials subject to review on a Rule 12(b)(6) motion are unclear as to the arbitrability question, or (2) the parties have come forward with facts putting the arbitrability question at issue, then the court may order limited discovery and then consider the arbitrability question on a summary judgment standard. *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 774 (3d Cir. 2013) (quotation marks and citation omitted).

## III. DISCUSSION

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citing 9 U.S.C. § 2). "Before compelling a party to arbitrate under the FAA, we must consider two 'gateway' questions, one of which is 'whether the parties have a valid arbitration agreement.'" *Bacon v. Avis Budget Grp.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Lamps Plus*, 139 S. Ct. at 1416).[2] Tharpe argues that the Agreement is not valid or enforceable because (1) there was no mutual assent, and (2) its cost-splitting provisions are cost-prohibitive. (Opp. at 4–9.) I find that there was a valid agreement to

---

[2] Another gateway question is one of contract interpretation: "whether the dispute is covered by the arbitration clause." *Bacon*, 959 F.3d at 599 n.6. Tharpe does not contest that, if the Agreement is enforceable, then his claims would fall within its scope. Indeed, the Agreement "applies to *all* disputes regarding the employment relationship," including "claims arising under the . . . Family Medical Leave Act." (Agreement ¶ 2 (emphasis added).) *See generally Arafa v. Health Exp. Corp.*, 233 A.3d 495, 508 (N.J. 2020).

arbitrate, but the record is insufficient to determine whether the cost provisions of that agreement are enforceable.

### A. Mutual Assent

Tharpe first argues that the Agreement lacks mutual assent. "One component of a valid arbitration agreement is that the parties agreed to arbitrate. To determine this, we apply state-law principles of contract formation." *Bacon*, 959 F.3d at 599–600. "Under New Jersey law, '[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms.'" *Id.* at 600 (quoting *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016)).[3] Tharpe puts forward two arguments for why mutual assent was lacking: (1) he only received and signed an acknowledgment form that was not attached to the Agreement itself, and (2) he did not have knowledge, based only on the acknowledgment form, that he was agreeing to waive any rights. (Opp. at 4–5.)

#### 1. Acknowledgment Form

Tharpe's first argument is unpersuasive. A person can manifest assent to an arbitration agreement by signing a separate form if (1) the arbitration agreement is described by the form "in such terms that its identity may be ascertained beyond doubt," and (2) "the party to be bound by the terms . . . had knowledge of and assented to the incorporated terms." *Bacon*, 959 F.3d at 600 (quoting *Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 983 A.2d 604, 617 (N.J. Super. Ct. App. Div. 2009)).[4] Tharpe manifested his assent to the Agreement because (1) the acknowledgment form identifies the Agreement beyond any doubt (Agreement, Acknowledgment ("I have received a copy of the . . . Dispute Resolution Agreement . . . .")), and (2) Tharpe's signature following the acknowledgment statement shows that he had

---

[3] The parties agree that New Jersey law applies.

[4] I assume for purposes of analysis that the acknowledgment section was indeed a separate form because, even with that assumption, Tharpe's argument fails. There is evidence, however, that the acknowledgement section was attached to the Agreement itself. (Hicks Decl. ¶¶ 5–8.)

4

knowledge of and assented to the Agreement's terms (*id.* ("I understand all the terms contained in the Agreement . . . . [T]he Company and I are mutually bound by this Agreement and its terms.")). *Bacon*, 959 F.3d at 600; *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1107 (N.J. 2003) (a party's signature to an acknowledgment form "is the customary and perhaps surest indication of assent"); *Raiczyk v. Ocean Cnty. Vet. Hosp.*, 377 F.3d 266, 270 (3d Cir. 2004) ("[I]t is well settled that signing a contract creates a conclusive presumption that the signer read, understood, and assented to its terms." (quoting marks and citation omitted)).

Tharpe's declaration that he "do[es] not recall seeing the Agreement or receiving a copy" does not change this result. (Tharpe Decl. ¶ 3.) "I don't recall," a common enough claim, has earned judicial skepticism. Under the case law, it is not sufficient, without more, to raise an issue regarding Tharpe's receipt of the Agreement. His signature creates a "conclusive presumption" of his receipt, *Raiczyk*, 377 F.3d at 270, the co-signor states that he was provided with the Agreement (Hicks Decl. ¶¶ 5–8), and the Complaint contains no allegations that might raise a plausible inference that Tharpe did not sign the agreement. Indeed, the New Jersey Supreme Court recently held that a plaintiff expressed her assent by signing an arbitration agreement—even though she submitted a declaration stating that she did not recall receiving the agreement. *Flanzman v. Jenny Craig, Inc.*, 236 A.3d 990, 994 n.2, 1003 (N.J. 2020). Thus, Tharpe's argument based on the alleged separateness of the acknowledgment form and his failure to recall the Agreement is unavailing.

### 2. Knowledge

Next, Tharpe argues that signing the acknowledgment form was not sufficient to evidence his assent to arbitration because the form did not sufficiently apprise him of the rights he was waiving. (Opp. at 6–7.) Specifically, he argues that the form did not say anything about the nature of "dispute resolution," that the signatory agrees to arbitrate, or that the signatory waives any rights. (*Id.*) These arguments fail.

An arbitration agreement, as a waiver of rights, must be clear and unambiguous. *Skuse v. Pfizer, Inc.*, 236 A.3d 939, 950 (N.J. 2020). But "[n]o particular form of words is necessary to accomplish a clear and unambiguous waiver." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 314 (N.J. 2014). Likewise, the signed waiver can be accomplished by an acknowledgement form that is separate from the underlying agreement. *Skuse*, 236 A.3d at 955; *Leodori*, 814 A.2d at 1107–08. "The acknowledgment form need not recite [the arbitration] policy verbatim so long as the form refers specifically to arbitration in a manner indicating an employee's assent, and the policy is described more fully in . . . another document known to the employee." *Skuse*, 236 A.3d at 955 (quoting *Leodori*, 814 A.2d at 1107–08).

The acknowledgment form here satisfies those legal standards. The form refers to dispute resolution explicitly and indicates the signatory's assent to that policy. (Agreement, Acknowledgment ("I have received a copy of the . . . Dispute Resolution Agreement (the 'Agreement') . . . . I further acknowledge that the Company and I are mutually bound by this Agreement and its terms.").) The form refers specifically to the document containing the policy, *i.e.*, the Dispute Resolution Agreement. That Agreement, in turn, clearly states that "[i]t is an **arbitration agreement**" and that employment disputes will be resolved "by Arbitration instead of in a court of law." (*Id.* ¶ 1 (bolding in original).)

*Skuse* illustrates why these materials suffice to create mutual assent. There, employees were emailed a module consisting of slides. 236 A.3d at 945. The first slide stated that employees agreed to arbitration as a condition of employment, the second slide contained a link to the arbitration agreement, and the third slide included the statement "I understand that I must agree to the Mutual Arbitration and Class Waiver Agreement as a condition of my employment" followed by a box instructing the employee to "CLICK HERE to acknowledge." *Id.* The materials here are similar; both the *Skuse* plaintiff and Tharpe (1) received an agreement setting forth an arbitration policy, (2) were

6

required to assent to a separate acknowledgment that referred to the agreement (in *Skuse,* by clicking an "acknowledge" button and here by physically signing an acknowledgment form), and (3) were informed that agreement to arbitration was a condition of employment, but opted to accept the position and continue working. These facts all show clear and unmistakable assent to a waiver of rights.

Tharpe's arguments, thus, fall flat. Although the acknowledgment form itself does not explain the nature of "dispute resolution," the form references and incorporates the Agreement that explains dispute resolution and makes clear that it means arbitration. Although the form does not say the signatory "agrees to arbitrate" or "waives rights," the form expresses that Securitas and the employee are "mutually bound" by the Agreement (Agreement, Acknowledgment), and the Agreement itself clearly states that it requires arbitration in lieu of bringing claims in court (*id.* ¶ 1). *See Skuse*, 236 A.3d at 957 ("What Skuse was asked to 'acknowledge'—what she did 'acknowledge'— was her understanding that she 'must agree' to the Agreement . . . . Although the word 'acknowledge' could be vague or misleading in a different setting, it was an appropriate term as used here.").

Accordingly, the Court is not persuaded by Tharpe's argument that he lacked an understanding that he waived his right to litigate his claims in court and must arbitrate them.

### B. Unconscionability

Nevertheless, Tharpe argues, the Agreement is unenforceable because its allocation of costs is unconscionable. (Opp. at 7.) He proffers that requiring terminated employees to foot the costs of arbitration will deter even meritorious claims of violations of statutory rights. (*Id.* at 8–9.)

An arbitration agreement is unenforceable when it makes arbitration prohibitively expensive. *Delta Funding Corp. v. Harris*, 912 A.2d 104, 113 (N.J.

2006); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000).[5] Whether a cost provision renders arbitration prohibitively expensive requires "case-by-case" analysis. *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 216 (3d Cir. 2003).

Applying that principle, courts in the Third Circuit and the State of New Jersey have found an arbitration agreement unenforceable under three scenarios: (1) the provision prohibits fee-shifting for statutory claims that would otherwise allow for fee-shifting, *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 203 (3d Cir. 2010); *Delta*, 912 A.2d at 113; (2) the provision shifts all costs to the employee (or risks doing so), *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 269–70 (3d Cir. 2003); *Delta*, 912 A.2d at 113; and (3) the provision splits costs between the employee and employer, *Blair v. Scott Specialty Gases*, 283 F.3d

---

[5]  This principle is recognized under both federal arbitration law and New Jersey unconscionability law, so I will apply both interchangeably. As a matter of federal arbitration law, the Supreme Court has recognized that arbitration will not be compelled under the FAA when a plaintiff cannot effectively vindicate his *federal* statutory rights in arbitration, *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238 (3d Cir. 2020), including when arbitration is cost-prohibitive, *Green Tree*, 531 U.S. at 90. This "effective vindication rule" "rest[s] on the principle that other federal statutes stand on equal footing with the FAA." *Ferguson v. Corinthian Colls.*, 733 F.3d 928, 936 (9th Cir. 2013). The Supreme Court has not applied the rule to claims under state statutes. *Id.*

Nonetheless, the New Jersey Supreme Court has recognized the same principle under unconscionability law. *Delta*, 912 A.2d at 113 ("Although this [effective vindication] requirement has its genesis in federal arbitration law, it is equally applicable in determining unconscionability under New Jersey law."). The Third Circuit has not clearly addressed whether a cost-prohibitive defense to arbitration should be addressed as a matter of the federal effective-vindication rule or state-law unconscionability. *Compare Blair v. Scott Specialty Gases*, 283 F.3d 595, 610 (3d Cir. 2002) (relying only on federal effective-vindication cases), *and Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 216–217 (3d Cir. 2003) (same), *with Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 269–70 (3d Cir. 2003) (addressing cost-prohibitive arguments under the heading of Virgin Islands unconscionability law but also relying on federal effective-vindication cases), *and Parilla v. IAP Worldwide Servs., Inc.*, 368 F.3d 269, 276, 283–84 (3d Cir. 2004) (same), *and Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 200, 203 (3d Cir. 2010) (same). Regardless, New Jersey recognizes the same principle, and that recognition has two consequences for this case: (1) Tharpe's cost-prohibitive defense could prevent arbitration of both his federal and state statutory claims, and (2) I may apply the federal and state case law interchangeably.

595, 610 (3d Cir. 2002); *see Atalese*, 99 A.3d at 316 n.3. For the latter two categories, the Third Circuit requires that the plaintiff provide evidence of the likely costs and his inability to pay them. *Parilla v. IAP Worldwide Servs., Inc.*, 368 F.3d 269, 284–85 (3d Cir. 2004).

The Agreement does not fall within the first scenario. True, fee-shifting is available for Tharpe's claims, 29 U.S.C. § 2617(a)(3) (FMLA); N.J. Stat. Ann. § 34:11B-12 (NJFLA), but the Agreement is not repugnant to those provisions. The Agreement's provision that the parties bear their own attorney's fees is expressly made "subject to any remedies to which that party may later be entitled under applicable law." (Agreement ¶ 10.) Such a preservation of remedies under "applicable law" entails that if a statute permits fee-shifting, then the party will be entitled to fees in arbitration, just as if it were in court. *Cohen v. Chase Bank, N.A.*, 679 F. Supp. 2d 582, 594 (D.N.J. 2010).

Nor does the Agreement fall within the second scenario. The Agreement does not risk that the employee bear *all* arbitration costs. The worst-case scenario, from Tharpe's perspective, would be that the employee and Securitas split the costs. (Agreement ¶ 10.) The Agreement, then, does not pose a full shift to the employee. *Compare Delta*, 912 A.2d at 109, 113 (arbitrator had unfettered discretion to shift all costs to one party); *Alexander*, 341 F.3d at 260 ("losing party shall bear the costs of the arbitrator's fees and expenses").

Whether the Agreement falls within the third scenario cannot be determined on the current record. The Agreement splits costs, and a cost-splitting provision may be unenforceable if the plaintiff presents evidence of the estimated costs of arbitration and his financial circumstances sufficient to demonstrate that arbitration would be cost-prohibitive. *Blair*, 283 F.3d at 609–10.[6] The Third Circuit has held that plaintiffs have a "right . . . to invoke

---

6   To be sure, this is a point on which New Jersey and Third Circuit case law diverge. The Third Circuit holds that cost-splitting provisions can be unenforceable when there is evidence that arbitration would, despite the split, be cost-prohibitive for the plaintiff. *Blair*, 283 F.3d at 609–10; *Parilla*, 368 F.3d at 284–85. But the New Jersey Appellate Division held that a cost-splitting provision was not unconscionable,

9

discovery procedures in the pre-arbitration proceeding" to gather and present such evidence. *Blair*, 283 F.3d at 608–09. What is more, the *Blair* court suggested that discovery, or at least some form of factual development, may be a prerequisite to a holding that a plaintiff failed to meet his burden. *See id.* at 609 ("[T]he party *must be given an opportunity* to pursue discovery related to the issue that it has the burden to prove[.]" (emphasis added) (quotation marks and citations omitted)); *see also Guidotti*, 716 F.3d at 774 n.5 (discussing *Blair* and stating that "[t]he need for discovery in that context is apparent"). Accordingly, the Third Circuit has remanded cases in which a district court's decision regarding a cost-shifting provision was not based on an adequate

---

regardless of evidence of an employee's financial constraints, because the New Jersey Supreme Court had only ever found cost-*shifting* provisions unconscionable. *Jaworksi v. Ernst & Young U.S., LLP*, 119 A.3d 939, 950–51 (N.J. Super. Ct. App. Div. 2015).

*Jaworksi* will not change my analysis. While I must "give due regard" to an Appellate Division decision, I can be "convinced by other persuasive data that the [New Jersey Supreme Court] would decide otherwise." *Lupu v. Loan City, LLC*, 903 F.3d 382, 391 (3d Cir. 2018) (citation omitted). The New Jersey Supreme Court has twice signaled its concern for cost-splitting arrangements. *Delta*, 912 A.2d at 113 ("We do, however, note the concerns that courts have expressed over cost-splitting arrangements."); *Atalese*, 99 A.3d at 316 n.3 ("Our opinion should not be read to approve that part of the arbitration clause that states: 'The costs of arbitration, excluding legal fees, will be *split equally* or born by the losing party . . . .'" (emphasis added)). *Dicta* is persuasive authority from a state supreme court. *Lupu*, 903 F.3d at 389. Moreover, in distinguishing *Atalese*, the *Jaworski* court overlooked the fact that the provision in *Atalese* was not solely a cost-shifting provision. *Compare Atalese*, 99 A.3d at 316 n.3, *with Jaworksi*, 119 A.3d at 950–51 ("[B]oth *Delta Funding* and *Atalese* are distinguishable. Here, unlike those matters, EY's fee-sharing provision does not provide for the potential shifting of the entire cost of arbitrating to a non-prevailing employee."). Finally, *Jaworski* brushed aside federal cases on cost-shifting, 119 A.3d at 950, an approach that is in tension with New Jersey Supreme Court's announcement that such cases are "equally applicable in determining unconscionability under New Jersey law." *Delta*, 912 A.2d at 113. Thus, I conclude that the New Jersey Supreme Court would not follow *Jaworksi* and will analyze whether the cost-splitting provision here would be unenforceable under both New Jersey and federal law.

10

factual record. *Id.* at 609–10; *Parilla*, 368 F.3d at 284–85; *Antkowiak v. TaxMasters*, 455 F. App'x 156, 160–61 (3d Cir. 2011).[7]

District courts have taken various approaches to the issue of what circumstances will trigger the *Blair* right to discovery. Some have ordered discovery where the plaintiff only raised the cost-prohibitive issue, even if only in a brief. *Adamson v. Foulke Mgmt. Corp.*, Civ. No. 08-4819, 2009 WL 961378, at *9 (D.N.J. Apr. 6, 2009). Others have declined to order discovery absent some initial evidence submitted by a plaintiff claiming costs were prohibitive. *Montgomery v. Bristol-Myers Squibb Co.*, Civ. No. 19-19948, 2020 WL 3169373, at *8 (D.N.J. June 15, 2020) ("Plaintiff's unsupported conclusion of unaffordability has failed to satisfy that burden."); *Brown v. Trueblue, Inc.*, No. 10-CV-0514, 2012 WL 1268644, at *8 (M.D. Pa. Apr. 16, 2012) (no discovery when plaintiff failed to put forward an affidavit of her financial constraints or estimates of arbitration costs); *Berrios v. Hovic*, No. 05-CV-192, 2010 WL 2384589, *7 n.4 (D.V.I. June 9, 2010) (same and distinguishing *Blair* and *Parilla* because the plaintiffs there had submitted some limited evidence to put the cost-prohibitive provision at issue); *cf. Watkins v. Vision Acad. Charter Sch.*, Civ. No. 20-656, 2020 WL 4220486, at *3 (E.D. Pa. July 23, 2020) (discovery ordered when plaintiff had presented affidavit).

I will require limited, targeted discovery here. For starters, the Third Circuit's strong language in *Blair* and history of remands indicate that factual development is required (or, at the least, wise). Tharpe's cost-prohibitive defense is, moreover, plausible. Although his affidavit does not attest to his financial circumstances, his Complaint gives rise to an inference that he has been unemployed since his termination, if only because he makes no mention

---

[7] The Third Circuit has not addressed *Blair*'s discovery holding since *Guidotti*, a case where the court attempted to clarify how a motion to compel arbitration fits into Rule 12(b)(6) or Rule 56 standards and when discovery is needed. But there is no reason to think that *Guidotti* abrogated *Blair* or otherwise wiped the slate clean. Quite the opposite, *Guidotti* discussed *Blair* at length as an example of when taking discovery is appropriate prior to deciding a motion to compel arbitration. 716 F.3d at 774 n.5.

of finding other work and he seeks front pay. (Compl. ¶ 38.) Likewise, his brief confirms that he has lost his job, income, and "financial footing." (Opp. at 8–9) *See Adamson*, 2009 WL 961378, at *9 (ordering discovery based on representations regarding financial status in brief). He also has a young child to support. (Compl. ¶ 12.) Thus, the Complaint's allegations make it plausible that he is financial vulnerable, so there is "a reasonable expectation that discovery will reveal" that arbitration would indeed to be too costly for him to pursue. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). As to the costs of arbitration, there is no basis for him to estimate them without discovery. *Blair*, 283 F.3d at 609. It would be a harsh result, then, to fault him for not meeting his burden and send him to arbitration only to face the very costs he feared.

Thus, I will enter an order allowing the parties 45 days to conduct limited discovery, solely on the issue of the costs of arbitration and Tharpe's inability to pay them. It may be helpful to consider such costs in comparison to the costs of litigation in court. After discovery, Securitas may renew its motion to compel, now informed by a factual record, on a summary-judgment standard. *See generally Guidotti*, 716 F.3d at 772–76.

To save everyone time on a renewed motion (and perhaps encourage the parties to reach agreement on the cost issue), I note the following. Even a finding that arbitration is cost-prohibitive will not necessarily preclude arbitration. Rather, an invalid cost provision may be severed from an agreement before compelling arbitration. *Spinetti*, 324 F.3d at 214; *Delta*, 912 A.2d at 114–15; *see also* Agreement ¶ 13 ("In the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable."). Upon their return, the parties should address severability.

### IV. CONCLUSION

For the reasons set forth above, the motion is denied without prejudice to renewal following limited discovery, to be complete within 45 days. Counsel for the parties shall confer and agree on a schedule for discovery within 7 days.

Issues and disagreements may be submitted to the Magistrate Judge assigned to the case, by letter or telephone conference.

A separate order will issue.

Dated: February 24, 2021

/s/ Kevin McNulty

_____
**Hon. Kevin McNulty
United States District Judge**